JOHN. BERKSHIRE, Appellant, v. O. F. PETERSON, Appellant.

83 197,
90 699.

Deed: DELIVERY: CANCELLATION: FRAUD. The plaintiff, being the owner of a house and lot worth one thousand dollars, and occupied by him as a homestead, entered into a written agreement with the

defendant to trade the same for eighty acres of land, which the defendant said he had not seen, but represented that it was worth twenty-five hundred dollars, and adapted to farming and suitable for a home.  Under the agreement the plaintiff was to see the land before closing the deal, and if the trade was made he was to assume an incumbrance of one thousand and fifty dollars against the land.  Subsequently the parties went to the office of the defendant's lawyers, executed deeds to their respective properties, the written agreement was destroyed, the recording fees for the two deeds were paid to the attorney, and thereupon the plaintiff left the office to go to see the defendant's land.  The evidence of the respective parties as to whether a delivery of the deeds was assented to at this time was conflicting, but the attorney understood that the deeds were to be recorded, and sent them to the proper office for that purpose.  The evidence showed that the plaintiff was inexperienced in business, ignorant and confiding, while the defendant was capable and awake to his own interest.  The land being found worth not over five hundred dollars, the defendant asks that his deed be canceled. *Held,* that the evidence did not show that the plaintiff had assented to a delivery of his deed, and as the defendant would gain an unconscionable advantage over the plaintiff by the trade if enforced, the latter was entitled to the relief asked.

*Appeal from Polk District Court.*—HON. JOSIAH GIVEN, Judge.

TUESDAY, JUNE 2, 1891.

ACTION in chancery to rescind a deed on the ground that its execution was secured through fraudulent and false representations as to the value of land traded to the plaintiff by defendant for the lot conveyed in the deed.  There was a decree dismissing the plaintiff's petition.  He now appeals to this court. *Reversed.*

*Ira W. Anderson,* for appellant.

*Macy & Sweeney* and *John A. Call,* for appellee.

BECK, C. J.—I.  The defendant owned an unincumbered house and lot in Des Moines, occupied by him and his family, and worth one thousand dollars, as

a home.   The defendant owned an eighty-acre tract of land in Jasper county, upon which was a mortgage for one thousand and fifty dollars.   The defendant represented that his land was worth twenty-five hundred dollars, and adapted to farming and the uses of a home.   He stated that he had not seen the land, and that he had paid twenty-five hundred dollars for it in trade.   The plaintiff was desirous of obtaining a home in the country, and finally bargained with the defendant to give his Des Moines house and lot for the land, and assume the payment of the incumbrance of one thousand and fifty dollars.   A written contract to this effect was prepared and signed by the parties.   The understanding between the parties was that the plaintiff, before executing the deed and closing the transaction, should have an abstract of title, and should see and inspect the land.   The evidence shows that the plaintiff, who was a plasterer, had entered into a contract for work, and was anxious not to lose time from his employment, and for this reason proposed that the matter should be closed up without delay.   He, therefore, proposed that the deeds be executed, and that he would go that very day to see the land.   He waived inspection of the abstract, accepting defendant's statements as to its effect.   They went to the office of the defendant's lawyers, had deeds prepared and executed, surrendered the written contract, which was destroyed,—each party paying fees to the lawyer for recording.   Thereupon the plaintiff left the office, and went to see the land, which was about twenty-five miles from Des Moines.   This was what was done.   The lawyer understood that the deeds were to be recorded and sent them to the proper office for that purpose. The plaintiff testifies that he did not direct the recording of the deeds, nor did he assent to the delivery of the deed, so as to make it effective, but that he understood the transaction to be that the trade should not be

completed until he saw the land and found it to be of the character represented. He is positive in the statement that he did not assent to the passing of the title, and that he understood that should not be done until he had seen and approved the land. He is contradicted by the defendant. The lawyer, while not stating that plaintiff assented to the delivery of the deed so as to make it effective, understood that was the purpose of the parties.

We reach the very satisfactory conclusion that the plaintiff did not assent to the delivery of the deed in the technical sense, which made it effective as a conveyance, that he did not intend the title should pass until he had examined the land and approved it as corresponding with the defendant's representations. The plaintiff clearly appears to be inexperienced in business; ignorant, if not dull; and, as honest men of that class always are, confiding, and the ready victim for a sharper. The defendant appears capable and awake to his own interest. The conclusion we have stated as to the plaintiff's understanding of the contract is supported by admissions made by the defendant after the plaintiff returned from the land, to the effect that the trade had not been consummated, had fallen through, because the plaintiff did not approve the land, and that it was made subject to this condition. The defendant admits these statements, but accounts for them by declaring that he was requested by the plaintiff to make them, in order to cheat an agent who had a contract for commission for making the trade. His denial and explanation surely tend to impair his credibility. The plaintiff's story is in the manner of a plain, confiding, dull and honest man. We accept it as entitled to more credit than the unnatural and unreasonable evidence of the defendant.

II. The plaintiff, upon visiting and inspecting the land, found that one end of it was a worthless sand-

bank, the other a swamp, with about twenty acres in the middle fit for cultivation, and the whole tract was worth four or five hundred dollars. We are clear in the opinion that the plaintiff did not assent to the title passing by the delivery of the deed, so as to have that effect, until he had seen and was satisfied with the land. He did examine the land, and rejected it. The convey-ance of his home is, therefore, invalid, and must be rescinded.

That the defendant represented the land as being worth twenty-five hundred dollars, when in fact it was not of the value of five hundred dollars, and that he knew it was not of the value he represented, we think is clearly established. The case is one where the superior mind of the sharp trader gains an uncon-scionable advantage over a dull and confiding man. The plaintiff, if the deeds be sustained, would lose his home, worth a thousand dollars, become indebted on a mortgage to the extent of one thousand and fifty dol-lars, and receive a tract of land worth five hundred dollars, which is useless for a home, the purpose for which he bought it. He becomes homeless and indebted five hundred and fifty dollars after applying the proceeds of the lands, if it will realize five hundred dollars, to the payment of the mortgage. In this court of conscience, clear evidence establishing valid con-tracts must be introduced which will permit of no escape from their enforcement to justify the expectation of upholding them, when they work such grossly inequi-table results. Whoever consents to stand upon such a contract must be content to accept just what the strict letter of the law and justice will give him. He may have his pound of flesh, but not a drop of blood.

The decision of the district court is reversed, and the cause is remanded for a decree in harmony with this opinion, or, at the plaintiff's opinion, such a decree may be entered here. REVERSED.